UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
LAURA LITINSKY,

                Plaintiff,

against

DIAMANTE THE DIAMOND
MANUFACTURERS, INC., RAFAEL
ZAKARIA, AND THE GEMOLOGICAL
INSTITUTE OF AMERICA,

                Defendants.
------------------------------X

Docket No.: 07-CV-11475 (RJS)

Judge: Sullivan

### DECLARATION OF GARY KOVACS IN SUPPORT OF PLAINTIFF LAURA LITINSKY'S ORDER TO SHOW CAUSE REQUESTING A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Gary Kovacs hereby declares as follows under penalty of perjury:

1. I am an associate with the law firm of Proskauer Rose LLP, 2255 Glades Road, Suite 340 West, Boca Raton, Florida and counsel to the Plaintiff Laura Litinsky in this action.

2. I make this declaration in support of Mrs. Litinsky's order to show cause for a temporary restraining order and preliminary injunction, pursuant to Fed. R. Civ. P. 64 and 65 and N.Y. C.P.L.R. § 7109(a), to preserve the status quo pending trial on the merits of her underlying action. Mrs. Litinsky asks that the Court preliminarily restrain and enjoin Defendant the Gemological Institute of America ("GIA") its servants, employees, agents, representatives, and all persons acting in concert with them, from transferring the 5.02 Cara Oval Brilliant Diamond subject of GIA Report 12011455 and GIA Report 16434784 (the "Diamond") to Defendants Diamante The Diamond Manufacturers, Inc. ("Diamante") and Rafael Zakaria ("Zakaria") or from removing, transferring, dismantling, selling, pledging or otherwise disposing of the

Diamond or permitting the Diamond to become subject to a security interest or lien .

3. From November on or about November 26, 2007 to on or about December 17, 2007, I spoke with Detective Rodriguez of the West Palm Beach Police Department approximately four times. During these conversations Detective Rodriguez informed me he was assigned investigated the loss of the Diamond and updated me on the progress of his investigation.

4. Detective Rodriguez informed me that in the course of his investigation, he learned that an unknown individual found the Diamond. That unknown individual approached Mr. Neffer, a jewelry broker working in the West Palm Beach, Florida area, in the hopes of selling the Diamond.

5. Under Florida Law,

> [w]henever any person finds any lost or abandoned property, such person shall report the description and location of the property to a law enforcement officer. The law enforcement officer taking the report shall ascertain whether the person reporting the property wishes to make a claim to it if the rightful owner cannot be identified or located…It is unlawful for any person who finds any lost or abandoned property to appropriate the same to his or her own use…**Any person who unlawfully appropriates such lost or abandoned property to his or her own use…commits theft…**

Fla. Stat. § 705.102 (emphasis added).

6. Detective Rodriguez informed me that in the course of his investigation, he also learned that learned that Mr. Neffer brought the Diamond to Provident Jewelry, located at 331 Clematis Street, West Palm Beach, Florida.

7. Provident Jewelry is a jewelry store that purchases and sells diamonds, precious stones and jewelry.

8. Detective Rodriguez informed me that in the course of his investigation he learned that Mr. Neffer offered the Diamond for sale at approximately $55,000, a price

approximately $95,000 less than its resale value. Mr. Neffer offered the Diamond for sale without any proof of ownership or GIA certificate and told Provident Jewelry that the Diamond had to be sold that day.

9. Detective Rodriguez informed me that in the course of his investigation he learned that Provident Jewelry purchased the Diamond from Mr. Neffer for approximately $55,000. Mr. Neffer took five percent as a commission and delivered the balance to the unknown individual. The location of the Diamond at the time of its sale and transfer to Provident Jewelry was West Palm Beach, Florida.

10. Detective Rodriguez informed me that in the course of his investigation he learned that Provident Jewelry re-sold the Diamond to Diamante and Zakaria for approximately $150,000. The location of the Diamond at the time of sale and transfer of the Diamond by Provident Jewelry to Diamante and Zakaria was a jewelry exposition in Miami, Florida.

11. Diamante and Zakaria are engaged in the business of buying and selling diamonds.

12. Detective Rodriguez informed me that he and the West Palm Beach Police Department consider the Diamond to be stolen property and continue to investigate the unknown individual and the circumstances surrounding his or her possession of the Diamond.

13. On or about December 11, 2007, I telephoned Reuben Yeroushalmi, the purported counsel for Defendants Zakaria and Diamante. Mr. Yeroushalmi's offices are located at 3700 Wilshire Boulevard Suite 480, Los Angeles, California. I asked Mr. Yeroushalmi whether Diamante and Zakaria would enter into a "standstill agreement" such that GIA would not return the Diamond to Diamante and Zakaria until the competing claims of ownership of the Diamond could be resolved by a court of competent jurisdiction.

14. Mr. Yeroushalmi would not confirm or deny if he represented Diamante and Zakaria but stated that he would call me back within 48 hours.

15. Mr. Yeroushalmi never called me back, and I was unable to contact Mr. Yeroushalmi again despite several telephone calls to his office during the period of December 13, 2007 to December 19, 2007.

16. No previous application has been made for the relief requested.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Boca Raton, Florida
       December 20, 2007

_____
Gary Kovacs, Esq.