Joshua W. Ruthizer (JR-5742)
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
Phone: (212) 969-3000
Fax: (212) 969-2900
Email: jruthizer@proskauer.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LAURA LITINSKY

              Plaintiff,

     against

DIAMANTE THE DIAMOND
MANUFACTURERS, INC., RAFAEL
ZAKARIA, AND THE GEMOLOGICAL
INSTITUTE OF AMERICA

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No.: 07-CV-11475(RJS)

Judge: Sullivan

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF LAURA LITINSKY'S ORDER TO SHOW CAUSE REQUESTING A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION TO PRESERVE THE STATUS QUO

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL STATEMENT ........................................................................................... 2

    I.    Mrs. Litinsky's Diamond ............................................................................. 2

    II.   The Theft of the Diamond and its Subsequent Fraudulent Sales ............................ 3

    III.  GIA Identifies Mrs. Litinsky's Stolen Diamond ....................................................... 5

    IV.  Mrs. Litinsky's Diligent Efforts to Resolve Ownership of the Diamond
         Without Litigation Failed, and Therefore a Preliminary Injunction and
         Temporary Restraining Are Required to Preserve the Status Quo ........................ 6

    V.   Mrs. Litinsky's Lawsuit and Her Request for Preliminary Injunction and
         Temporary Restraining Order ............................................................................. 9

ARGUMENT ............................................................................................................. 10

    I.    A Preliminary Injunction and a Temporary Restraining Order Should be
         Entered ...................................................................................................... 11

        A.   Mrs. Litinsky Will Suffer Irreparable and Immediate Harm in the
             Absence of an Injunction ..................................................................... 11

        B.   Mrs. Litinsky will Succeed on the Merits of Her Action ........................ 12

             1.   Mrs. Litinsky Originally Purchased The Diamond, Which
                 Was Later Stolen From Her .......................................................... 13

             2.   The Sale and Transfer of the Diamond to Provident Jewelry
                 and then to Diamante and Zakaria and Void and Without
                 Title ............................................................................................ 14

    II.   A Preliminary Injunction and Temporary Restraining Order Should Issue
         Pursuant to N.Y. C.P.L.R. § 7109(a) as the Diamond is a Unique Object ............ 17

    III.  The Equities Favor Preserving the Status Quo ..................................................... 18

    IV.  GIA Will Not Oppose the Preliminary Injunction and Temporary
         Restraining Order ................................................................................................ 18

    V.   No Bond Is Required Because There Is No Prejudice to Zakaria and
         Diamante ............................................................................................... 19

CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Anderson Contracting Co. v. Zurich Ins. Co.*
, 448 So. 2d 37 (Fla. 1st Dist. Ct. App. 1984) ......................................................16

*Battles v. State*,
602 So. 2d 1287 (Fla. 1992) ......................................................................15

*Brown & Root, Inc. v. Ring Power Corp.*,
450 So. 2d 1245 (Fla. 5th Dist. Ct. App. 1984) ..................................................15

*Christie's Inc. v. Davis*,
247 F. Supp. 2d 414 (S.D.N.Y. 2002)..........................................................12, 18

*Danae Art Int'l Inc. v. Stallone*,
163 A.D.2d 81, 557 N.Y.S.2d 338 (1st Dep't 1990) ....................................12, 17, 18

*Doctor's Assocs. v. Stuart*,
85 F.3d 975 (2d Cir. 1996) ..........................................................................19

*Ferguson v. Tabah*,
288 F.2d 665 (2d Cir. 1961) ........................................................................19

*Gemological Inst. of Am. v. Zarian Co.*,
03 Civ. 4119 (RLE), 2006 U.S. Dist. LEXIS 54102 (S.D.N.Y. Aug. 4, 2006).........................14

*Gemological Inst. of Am. v. Zarian Co.*,
349 F. Supp. 2d 692 (S.D.N.Y. 2004)................................................................14

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487, 61 S. Ct. 1020 (1941).................................................................14

*Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n*,
965 F.2d 1224 (2d Cir. 1992) .......................................................................11

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*,
312 F.3d 94 (2d Cir. 2002) ..........................................................................11

*Republic of Lebanon v. Sotheby's*,
167 A.D.2d 142, 561 N.Y.S.2d 566 (1st Dep't 1990)...........................................16, 18

*Robjudi Corp. v. Quality Controlled Prods.*,
111 A.D.2d 156, 488 N.Y.S.2d 787 (2d Dep't 1985) ............................................18

*Tom Doherty Assocs. v. Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir. 1995) ................................................................................11, 18

*United States v. Crawford Tech. Servs.*,
  03 Civ. 3940 (HB), 2004 U.S. Dist LEXIS 5824 (S.D.N.Y. Apr. 6, 2004) ..............................14

## Statutes

28 U.S.C. § 2201 ................................................................................................9

Fla. Stat. § 705.102 ..........................................................................................13

N.Y. C.P.L.R. § 7108 ..........................................................................................9

N.Y. C.P.L.R. § 7109(a) ...............................................................................1, 10, 17

N.Y. C.P.L.R. 7109(b) ..........................................................................................9

N.Y. C.P.L.R. Article 7100 ...................................................................................16

## Rules

Fed. R. Civ. P. 57 ..............................................................................................9

Fed. R. Civ. P. 64 .....................................................................................1, 9, 10, 16

Fed. R. Civ. P. 65 ..............................................................................................1

Plaintiff Laura Litinsky, by her attorneys Proskauer Rose LLP, submits this memorandum of law in support of her Order to Show Cause seeking a temporary restraining order and preliminary injunction, pursuant to Fed. R. Civ. P. 64 and 65 and N.Y. C.P.L.R. § 7109(a), to preserve the status quo pending the outcome of a trial on the merits of her action. Mrs. Litinsky asks that this Court preliminary restrain and enjoin Defendant the Gemological Institute of America ("GIA") its servants, employees, agents, representatives, and all persons acting in concert with them from transferring the 5.02 carat oval cut brilliant F-VVS2 diamond subject of GIA Certificate 12011455 and GIA Certificate 16434784 (the "Diamond") to Defendants Diamante The Diamond Manufacturers, Inc. ("Diamante") and Rafael Zakaria ("Zakaria"), or from removing, transferring, dismantling, selling, pledging or otherwise disposing of the Diamond or permitting the Diamond to become subject to a security interest or lien, until such time as the underlying action is decided.

## PRELIMINARY STATEMENT

This is an urgent matter in which Mrs. Litinsky's unique property, the Diamond, is at risk of being transferred out of New York State to Defendants Zakaria and Diamante, two parties who have no ownership rights to the Diamond. Mrs. Litinsky lost possession of the Diamond on November 18, 2006 and promptly reported the Diamond lost to local law enforcement and to GIA, the worldwide leader in gemstone identification and grading. She asked GIA to alert her and law enforcement if anyone tried to re-register the Diamond. Almost a year later, the Diamond was sent to GIA by Zakaria and Diamante for analysis, grading and certification. Once in possession of the Diamond, GIA realized it had been reported lost by Mrs. Litinsky and promptly notified her. GIA has stated that they will transfer the Diamond back to Zakaria and Diamante on December 27, 2007 unless the competing claims of ownership are resolved, a

release is executed by all parties authorizing GIA to stop transfer of the Diamond and holding

GIA harmless, or a court order is issued preventing GIA from transferring the Diamond to

Zakaria and Diamante.  Mrs. Litinsky attempted to resolve the ownership dispute and asked

Zakaria and Diamante to enter into such a release, but received no response.  Mrs. Litinsky is

therefore forced to seek this injunction and temporary restraint to prevent transfer of the

Diamond to Zakaria and Diamante until the merits of her underlying action can be resolved.

## FACTUAL STATEMENT

### I.    Mrs. Litinsky's Diamond

On September 24, 2003, Mrs. Litinsky purchased the a ring for $180,000 from Bulgari,

30 rue du Rhone, 1204, Genève, Switzerland (the "Ring").  (Declaration of Laura Litinsky

("Litinsky Decl.") ¶ 2, Ex. 1.)  The Diamond was set within the Ring along with two other

diamonds of 0.95 carats.  (Id. ¶ 5.)  Bulgari presented the Ring and the Diamond to Mrs. Litinksy

with a sales invoice and GIA Certificate 12011455, dated May 22, 2002.  (Id. ¶¶ 5-6, Exs 1-2.)

The GIA Certificate attests to the quality and identity of the Diamond.  (Id. ¶ 6, Ex. 2.)  On

November 15, 2007, Bulgari provided Mrs. Litinsky with duplicate copies of the sales invoice

and GIA Certificate 12011455.  (Id. ¶ 7, Ex. 3.)

On November 18, 2006, Mrs. Litinsky attended a private party at the Norton Museum of

Art, located at 1451 South Olive Avenue, West Palm Beach, Florida.  She wore the Ring to the

event.  (Id. ¶ 8.)  When Mrs. Litinsky arrived home after the party, she discovered that the

Diamond was not within its setting in the Ring.  (Id. ¶ 9.)  The next morning, Mrs. Litinsky

contacted the host of the private party, the director of the Norton Museum, the administrative

staff of the Norton Museum, the lost and found department of the Norton Museum, the cleaning

crew at the Norton Museum and the caterer of the private party to see if they had or could locate the Diamond.  (Id. ¶ 10.)  No one that she contacted was able to locate the Diamond.  (Id.)

On December 4, 2006 Mrs. Litinsky reported the Diamond as lost to the West Palm Beach, Florida Police Department.  (Id. ¶ 11, Ex. 4.)  Mrs. Litinsky described the Diamond to the police as a 5.02 carat oval Bulgari diamond which was not insured.  (Id. ¶ 12, Ex. 4.)  Mrs. Litinsky also informed the police that the Diamond could be "identified through paperwork and markings."  (Id.)  In addition, Mrs. Litinsky informed the police that she was contacting local pawn shops to see if they has come into possession of the Diamond.  (Id.)

On December 20, 2006, Mrs. Litinsky telephoned GIA to report the Diamond lost.  She spoke with Joe Graff of GIA.  (Id. ¶ 13, Ex. 5.)  That same day, Mrs. Litinsky sent Mr. Graff a facsimile letter to report the Diamond lost.  (Id. ¶ 14, Ex. 5.)  Mrs. Litinsky included with her facsimile letter a copy of the West Palm Beach Police Report and a copy of GIA Certificate 12011455.  (Id.)  Mrs. Litinsky described the Diamond to Mr. Graff and GIA as a "5.02 Oval Brilliant VVS2/F, Bulgari diamond."  She informed Mrs. Graff and GIA that the Diamond "fell out of its setting the evening of November 18, 2006" and asked Mr. Graff and GIA to "inform the police if at anytime in the future anyone requests a GIA certificate on this stone."  (Id. ¶ 15, Ex. 5.)

## II.     The Theft of the Diamond and its Subsequent Fraudulent Sales

From on or about November 26, 2007 to on or about December 17, 2007, Gary Kovacs, counsel to Mrs. Litinsky and an associate with Proskauer Rose in its Boca Raton, Florida office, spoke with Detective Rodriguez of the West Palm Beach Police Department approximately four times.  (Declaration of Gary Kovacs ("Kovacs Decl.") ¶ 3.)  Detective Rodriguez was assigned

investigated the loss of the Diamond. (Kovacs Decl. ¶ 3.) Detective Rodriguez updated Mr. Kovacs on the progress of his investigation. (Id.)

In the course of his investigation, Detective Rodriguez learned that an unknown individual found the Diamond. (Id. ¶ 4.) That unknown individual approached Mr. Neffer, a jewelry broker working in the West Palm Beach, Florida area, in the hopes of selling the Diamond. (Id.)

Under Florida Law, the unknown individual committed theft when he or she brought the Diamond to Mr. Neffer rather than bringing the Diamond to a law enforcement officer (*see* Argument Section I(B)(1) below). (Id. ¶ 5, Fla. Stat. § 705.102.)

During the course of his investigation, Detective Rodriguez learned that Mr. Neffer brought the Diamond to Provident Jewelry, located at 331 Clematis Street, West Palm Beach, Florida. (Id. ¶ 6.) Provident Jewelry is a jewelry store that purchases and sells diamonds, precious stones and jewelry. (Id. ¶ 7.) Mr. Neffer offered the Diamond for sale at approximately $55,000, a price approximately $95,000 less than its resale value. (Id. ¶ 8.) Mr. Neffer offered the Diamond for sale without any proof of ownership or GIA certificate and told Provident Jewelry that the Diamond had to be sold that day. (Id.) Provident Jewelry purchased the Diamond from Mr. Neffer for approximately $55,000. (Id. ¶ 9.) Mr. Neffer took five percent as a commission and delivered the balance to the unknown individual. (Id.) The location of the Diamond at the time of its sale and transfer to Provident Jewelry was West Palm Beach, Florida. (Id.)

Because the Diamond was stolen, Mr. Neffer did not possess, and could not transfer, title to the Diamond when he sold the Diamond to Provident Jewelry. Therefore, Provident Jewelry never obtained title to the Diamond. *See* Argument Section I(B)(2) below.

Detective Rodriguez also learned that Provident Jewelry re-sold the Diamond to Diamante and Zakaria for approximately $150,000.  (Id. ¶ 10.)  Diamante and Zakaria are engaged in the business of buying and selling diamonds.  (Id. ¶ 11.)  The location of the Diamond at the time of sale and transfer of the Diamond by Provident Jewelry to Diamante and Zakaria was a jewelry exposition in Miami, Florida.  (Id. ¶ 10.)

Because the Diamond was stolen, and because Provident Jewelry did not have title to the Diamond, Diamante and Zakaria never received title to the Diamond and do not currently possess title to the Diamond.  *See* Argument Section I(B)(2) below.

Detective Rodriguez and the West Palm Beach Police Department consider the Diamond to be stolen property and continue to investigate the unknown individual and the circumstances surrounding his or her possession of the Diamond.  (Id. ¶ 12.)

## III.    GIA Identifies Mrs. Litinsky's Stolen Diamond

After their purchase of the Diamond, Zakaria and Diamante sent the Diamond to GIA to have it graded, analyzed and identified.  (Litinsky Decl. Ex. 6.)  GIA analyzed the Diamond and created GIA Certificate 16434784.  (Id. ¶ 18, Ex. 7.)  After GIA conducted its analysis, it came to the conclusion that the diamond submitted by Zakaria and Diamante was actually the Diamond, subject of GIA Certificate 12011455, and reported lost by Mrs. Litinsky on December 20, 2006.  (Id. ¶¶ 16-17, Exs. 6-7.)

On November 19, 2007, Ivy R. Cutler of GIA sent a letter to Mrs. Litinsky notifying her that the Diamond had been submitted to GIA by another GIA client for analysis and grading.  (Id. ¶ 16, Ex. 6.)  GIA requested that Mrs. Litinsky consent to disclose her contact information to the other GIA client.  (Id.)

On November 27, 2007, Ivy R. Cutler of GIA sent Mrs. Litinsky a letter informing her that Diamante was the other GIA client that submitted the Diamond to GIA.  (Id. ¶ 17, Ex. 7.) GIA also informed Mrs. Litinsky and Diamante and Zakaria of their competing claims of ownership in the Diamond.  (Id.)  GIA also notified Mrs. Litinsky that if she "does not (a) resolve with Diamante these competing claims or ownership or (b) obtain a directive from law enforcement or an order, from a court having jurisdiction over GIA, directing GIA to hold the [D]iamond or to deliver it to a third-party, then GIA will consider returning the [D]iamond to Diamante – as the party who delivered the diamond to GIA."  (Id.  ¶ 19, Ex. 7.)

## IV.    Mrs. Litinsky's Diligent Efforts to Resolve Ownership of the Diamond Without Litigation Failed, and Therefore a Preliminary Injunction and Temporary Restraining Are Required to Preserve the Status Quo

On December 11, 2007, Mr. Kovacs, telephoned Reuben Yeroushalmi, the purported counsel for Defendants Zakaria and Diamante.  (Kovacs Decl. ¶ 13.)  Mr. Yeroushalmi's offices are located at 3700 Wilshire Boulevard Suite 480, Los Angeles, California.  (Id.)  Mr. Kovacs inquired whether Diamante and Zakaria would enter into a "standstill agreement" such that GIA would not return the Diamond to Diamante and Zakaria until the competing claims of ownership of the Diamond could be resolved by a court of competent jurisdiction.  (Id.)  Mr. Yeroushalmi would not confirm or deny if he represented Diamante and Zakaria but stated that he would call Mr. Kovacs back within 48 hours.  (Id. ¶ 14.)  Mr. Yeroushalmi never called Mr. Kovacs, and Mr. Kovacs was unable to contact Mr. Yeroushalmi again despite several telephone calls to his office.  (Id. ¶ 15.)

On or about December 11, 2007, Joshua Ruthizer, Mrs. Litinsky's counsel and an associate in Proskauer Rose's New York Office, spoke with Todd Marcus of DLA Piper US LLP, counsel to GIA.  (Declaration of Joshua Ruthizer ("Ruthizer Decl.") ¶ 3.)  Mr. Ruthizer

inquired as to whether GIA would agree to stop return the Diamond to Zakaria and Diamante while ownership of the Diamond was determined by a court of competent jurisdiction. (Id.)  Mr. Marcus replied that GIA would do so if all parties executed a release to hold GIA harmless under such circumstances. (Id.)

On December 14, 2007, Mr. Ruthizer sent a letter via UPS Next Day Air to Diamante, Zakaria, GIA, Mr. Yeroushalmi, and Mr. Marcus requesting that they return the Diamond to Mrs. Litinsky's immediate and complete possession. (Id. ¶ 4, Ex. 1.)  Mr. Ruthizer also sent the letter via facsimile to Mr. Yeroushalmi, GIA and Mr. Marcus.  A facsimile number for Zakaria and Diamante was not available to Mr. Ruthizer at this time. (Id. ¶ 4.)  Mr. Ruthizer's letter informed them that under Florida Law, the Diamond was stolen property, and therefore Diamante and Zakaria never obtained title to the Diamond (*see* Argument Section I(B) below). (Id. ¶ 5, Ex. 1.)

Mr. Ruthizer's letter also stated that Mrs. Litinsky would offer assistance, including documents and testimony, in a lawsuit commenced by Zakaria and Diamante against Provident Jewelry to rescind the sale of the Diamond. (Id. ¶ 7, Ex. 1.)

Mr. Ruthizer's letter requested that a written agreement be executed by all parties stating that: "(1) Diamante relinquishes possession of the Diamond and agrees that Mrs. Litinsky is the owner of the Diamond; (2) GIA is to return the Diamond to Mrs. Litinksy or her counsel within 30 days of the agreement; (3) GIA will hold the Diamond in its possession until ownership of the Diamond can be determined by a court of competent jurisdiction; and/or (4) GIA will commence an interpleader action in the United States District Court for the Southern District of New York to determine the ownership of the Diamond." (Id. ¶ 8, Ex. 1.)

Mr. Ruthizer's letter stated that Mrs. Litinsky could not allow December 27, 2007 to pass without protecting her legal rights to the Diamond, and therefore if a signed agreement was not executed by December 20, 2007, she would have no choice but to file a lawsuit to regain possession of the Diamond and to seek a temporary restraining order or preliminary injunction. (Id. ¶ 9, Ex. 1.)

Neither Zakaria, Diamante, Mr. Yeroushalmi or anyone else identifying themselves as counsel to Zakaria or Diamante responded to Mr. Ruthizer's December 14 letter.  (Id. ¶ 10.)

On December 18, 2007, Mr. Ruthizer spoke via telephone with Mr. Marcus.  Mr. Marcus stated that GIA had no stake in the ownership of the Diamond but that GIA could not transfer the Diamond to Mrs. Litinsky absent a court order due to the competing claims of ownership.  (Id. ¶ 11.)  Mr. Ruthizer informed Mr. Marcus that Mrs. Litinsky would seek a temporary restraining order and preliminary injunction on Friday December 21, 2007 unless Zakaria and Diamante agreed to halt transfer of the Diamond.  Mr. Marcus stated that **GIA would not oppose an injunction which prevented GIA from transferring the Diamond pending the determination of the ownership issues.**  (Id. ¶ 12.)  Mr. Marcus also stated that he would accept service of the preliminary injunction and temporary restraining order on behalf of GIA.  (Id. ¶ 12.)

In addition, Mr. Marcus stated that after an injunction was issued GIA might request to deposit the Diamond with the Court pending the outcome of the underlying action, and that GIA would request to be harmless in such circumstances.  (Id. ¶ 13.)

On December 20, 2007, Mr. Ruthizer telephoned the offices of Diamante in California. Mr. Ruthizer identified himself as an attorney and stated that he needed to fax a letter pertaining

to a court action to their offices. The individual on the other end of the line provided Mr.

Ruthizer with a fax number for Diamante. (Id. ¶ 14).

On December 20, 2007, Mr. Ruthizer sent a letter via facsimile and UPS Next Day Air to

Zakaria, Diamante and Mr. Yeroushalmi. The letter stated that Zakaria, Diamante and Mr.

Yeroushalmi had not responded to the December 14 letter and Mrs. Litinsky could not let

December 27, 2007 pass without protecting her legal rights to the Diamond. The letter notified

Zakaria, Diamante and Mr. Yeroushalmi that on December 21, 2007, or as soon after as possible,

Mrs. Litinsky would file a complaint to regain possession of the Diamond and a request a

temporary restraining order and preliminary injunction to preserve the status quo and prevent

GIA from returning the Diamond to Zakaria and Diamante pending the outcome of her action.

(Id. ¶ 16).

### V.    Mrs. Litinsky's Lawsuit and Her Request for Preliminary Injunction and Temporary Restraining Order

Because Mrs. Litinsky's attempts to resolve the ownership dispute of the Diamond

without litigation were unsuccessful, due to Zakaria, Diamante and Mr. Yeroushalmi's failure to

respond to inquiries of her counsel, Mrs. Litinsky filed, on December 21, 2007 and

contemporaneously with this order to show cause, a complaint seeking (1) a declaratory

judgment pursuant to Fed. R. Civ. P. 57, 28 U.S.C. § 2201 and N.Y. C.P.L.R. § 7108 that she is

the owner of the Diamond, or in the alternative Mrs. Litinsky's possessory interest in the

Diamond is superior than all parties to this action, and entitled to complete and immediate

possession of the Diamond, and (2) a order of seizure pursuant to Fed. R. Civ. P. 64 and N.Y.

C.P.L.R. 7109(b) ordering the New York County Sheriff or the United States Marshalls to sieze

the Diamond from Defendants and deliver it to Mrs. Litinsky or her counsel.

Mrs. Litinsky's attempts to preserve the status quo and avoid the need to seek an injunction also were unsuccessful because of the unresponsiveness of Diamante and Zakaria. On more than one occasion, Mrs. Litinsky's counsel requested that they agree to enter into an agreement by which GIA would not return the Diamond to Zakaria and Diamante until the ownership of the Diamond was resolved by a court. Mrs. Litinsky's counsel specifically informed Diamante and Zakaria that if an agreement was not executed by December 20, 2007, that Mrs. Litinsky would seek an injunction. Diamante and Zakaria were unresponsive. Because GIA will not stop return of the Diamond to Zakaria after December 27, 2007 without a court order, Mrs. Litinsky has no choice but to ask this court for a temporary restraining order and preliminary injunction to prevent GIA from transferring the Diamond out of its custody and to the Zakaria and Diamante, where it may be sold, transferred to a third party, otherwise encumbered, and never again found.

## ARGUMENT

A preliminary injunction and temporary restraining order to preserve the status quo pending the outcome of a trial on the merits should be granted because Mrs. Litinsky will suffer irreparable harm in the absence of an injunction. The Diamond will be transferred from the possession of GIA, a neutral party with no claim to the Diamond, to Zakaria and Diamante, two parties with no ownership interest in the Diamond, and who can do with it as they please. The Diamond may be sold, transferred, encumbered, or even re-cut into smaller pieces. Mrs. Litinsky is likely to succeed on the merits or her action to recover the Diamond because the Diamond is stolen property and Zakaria and Diamante do not have title to the Diamond. In addition, an injunction should be granted under Fed. R. Civ. P. 64 and N.Y. C.P.L.R. § 7109(a) because the underlying action is for the return of unique chattel.

# I.    A Preliminary Injunction and a Temporary Restraining Order Should be Entered

"A party seeking a preliminary injunction in this Circuit must show: (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002). The standards which "govern consideration of an application for a temporary restraining order…are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n*, 965 F.2d 1224, 1228 (2d Cir. 1992).

### A.    *Mrs. Litinsky Will Suffer Irreparable and Immediate Harm in the Absence of an Injunction*

Mrs. Litinsky will suffer irreparable and immediate harm on or after December 27, 2007 because GIA has stated that it will return the Diamond to Zakaria and Diamante, two parties with no ownership interest in the Diamond. GIA has stated that it will only stop return if Mrs. Litinsky "(a) resolve[s] with Diamante these competing claims or ownership or (b) obtain[s] a directive from law enforcement or an order, from a court having jurisdiction over GIA, directing GIA to hold the [D]iamond or to deliver it to a third-party." (Litinsky Decl. ¶ 19, Ex. 7.) Mrs. Litinsky has attempted to resolve the claims of ownership, and has received no response from Zakaria and Diamante. She therefore filed a complaint to have the Diamond returned to her possession. An injunction should be granted to preserve the status quo while she litigates the merits of her case.

"Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (internal quotations omitted). The injury here

is actual.  On or after December 27, 2007, the Diamond will be returned to Zakaria and

Diamante, who have no ownership interest in the Diamond.  Once in possession of the Diamond,

Zakaria and Diamante can sell it or transfer it to a third party, encumber it, or even cut it up and

sell it in multiple pieces.  The status quo must be preserved with GIA, a neutral third party with

no stake in this outcome of this action holding the Diamond.

Monetary damages also will not make Mrs. Litinsky whole because the Diamond is

unique (*see* Argument Section II below).  Mrs. Litinsky purchased a specific Ring with a specific

Diamond, which came with a specific GIA Certificate.  Money damages will not allow her to

purchase an identical Diamond.

Even apart from the clear showing here of irreparable harm, a preliminary injunction

independently is warranted to "maintain the status quo pending a resolution of the issues

presented."  *Danae Art Int'l Inc. v. Stallone*, 163 A.D.2d 81, 82, 557 N.Y.S.2d 338, 339 (1st

Dep't 1990).  In addition, the fact that Zakaria and Diamante are in the business of selling and

purchasing diamonds should weigh in favor of an injunction.  *Danae Art Int'l,* 163 A.D.2d at 82,

557 N.Y.S.2d at 339.

B.     *Mrs. Litinsky will Succeed on the Merits of Her Action*

Although Mrs. Litinsky can prove that she is the rightful owner of the Diamond, to

succeed on the merits of her claim to retrieve possession of the Diamond, she only need prove

that she has higher ownership right to the Diamond than any other party to the action.  "In an

action for recovery of chattels under § 7101, the sole issue is which party has the 'superior

possessory right' to the chattels."  *Christie's Inc. v. Davis*, 247 F. Supp. 2d 414, 419 (S.D.N.Y.

2002).  Mrs. Litinsky has superior possessory rights than any other party because the Diamond

was originally purchased and possessed by her, it was stolen from her, and therefore all transfers of the Diamond since its theft are void.

1.     Mrs. Litinsky Originally Purchased The Diamond, Which Was Later Stolen From Her

Mrs. Litinsky originally purchased the Diamond on September 24, 2003 as set in the Ring. She possessed the Diamond until November 18, 2006, at which time it was stolen, either by force or operation of law. Mrs. Litinsky wore the Ring with the Diamond to a private party at the Norton Museum of Art in West Palm Beach, Florida on November 18, 2006. When she returned home after the event, she discovered that the Diamond was no longer in the Ring. She never willfully or purposefully transferred or sold the Ring or the Diamond to anyone. The Diamond was either taken from the Ring against Mrs. Litinsky's consent or fell out of the Ring and was lost.

If the Diamond was taken against Mrs. Litinsky's consent, then it is obvious that the Diamond was stolen. However, even if the Diamond was lost, Florida law still states that the Diamond is stolen property.

> [w]henever any person finds any lost or abandoned property, such person shall report the description and location of the property to a law enforcement officer. The law enforcement officer taking the report shall ascertain whether the person reporting the property wishes to make a claim to it if the rightful owner cannot be identified or located…It is unlawful for any person who finds any lost or abandoned property to appropriate the same to his or her own use…**Any person who unlawfully appropriates such lost or abandoned property to his or her own use…commits theft…**

Fla. Stat. § 705.102 (emphasis added). If the Diamond was lost, then whoever found the Diamond was under an obligation to report the Diamond to a law enforcement officer. The unknown individual committed theft when he or she brought the Diamond to Mr. Neffer for sale, appropriating the Diamond for his or her own use. Therefore, the Diamond is stolen property. In

-13-

addition, the West Palm Beach Police Department considers the Diamond to be stolen property. (Kovacs. Decl. ¶ 12.)

         2.        The Sale and Transfer of the Diamond to Provident Jewelry and then to Diamante and Zakaria and Void and Without Title

Because the Diamond was stolen, all transfers of the Diamond after its theft were void and without title. "It is firmly established under New York law that a purchaser of stolen property does not have clear title, even if the purchase was made in good faith." *United States v. Crawford Tech. Servs.*, 03 Civ. 3940 (HB), 2004 U.S. Dist LEXIS 5824, at *15 (S.D.N.Y. Apr. 6, 2004) (ownership dispute of a diamond). However, the sales and transfers of the Diamond after its theft both occurred outside of New York State. Therefore, choice of law rules must be used to determine what law should be applied to determine if the transfers are void and without title.

"In a diversity action, a federal court applies choice of law rules of the state in which it sits, in this case, New York. *Gemological Inst. of Am. v. Zarian Co.*, 349 F. Supp. 2d 692, 696 (S.D.N.Y. 2004) (*further proceedings at Gemological Inst. of Am. v. Zarian Co.*, 03 Civ. 4119 (RLE), 2006 U.S. Dist. LEXIS 54102 (S.D.N.Y. Aug. 4, 2006) (ownership dispute of a stolen diamond), *citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020 (1941). "New York choice of law mandates that questions regarding the 'validity of a transfer of personal property [be] governed by the law where the property is located at the time of the transfer…Therefore, where the sale of the diamond occurred is material in this case because it will determine which law on purchases applies." *Zarian Co.*, 349 F. Supp. 2d at 696. According to Detective Rodriguez's investigation, the subsequent sales and transfers of the Diamond both occurred in Florida. Therefore, Florida law on the purchase of stolen items will determine if the transfers are void.

Under Florida law and "basic principles of property law, a person who acquires possession of property by theft cannot convey good title to another person, even to a bona fide purchaser. Because the purchaser of stolen property does not have good title, the property can be recovered from the purchaser and returned to the true owner." *Battles v. State*, 602 So. 2d 1287, 1288 (Fla. 1992) (internal citation omitted). "Florida follows the general rule that one who acquires possession of property by theft cannot confer good title by its sale, even to a bona fide purchaser. At best, a purchaser in good faith has the title and right to possession of the property against all except the rightful owner." *Brown & Root, Inc. v. Ring Power Corp.*, 450 So. 2d 1245, 1246 (Fla. 5th Dist. Ct. App. 1984). Under Florida law, no title could pass through sale of the Diamond to Provident Jewelry or Diamante and Zakaria because the Diamond was stolen property.

Mr. Neffer was a broker acting on behalf of the person who stole the Diamond. The person who stole the Diamond, and Mr. Neffer as his or her agent, could not "convey good title to another person, even to a bona fide purchaser." *Battles*, 602 So. at 1288. Therefore, even if Provident was a bona fide purchaser of the Diamond, they never came into possession of good title to the Diamond. However, the circumstances of the sale of the Diamond by Mr. Neffer weigh against Provident Jewelry being in the position of a bona fide purchaser. Mr. Neffer did not present any documentation regarding title to the Diamond. Also, Mr. Neffer offered the Diamond at a price substantially less than what it was worth, and informed Provident Jewelry that the Diamond had to be sold that day. Provident Jewelry unwisely found nothing suspicious in this behavior and purchased the Diamond from Mr. Neffer.

The sale of the Diamond by Provident to Zakaria and Diamante is also void. Under Florida law, "one cannot convey a better title than he has and conversely, one cannot claim a

better title than he, in fact, receives." *Anderson Contracting Co. v. Zurich Ins. Co.*, 448 So. 2d

37, 38 (Fla. 1st Dist. Ct. App. 1984).  In addition,

> It is the public policy of Florida that one in possession of stolen
> property, even if he has innocently purchased it from a "dealer",
> has no possessory or ownership right to the property as against the
> rightful owner from whom the property was stolen, since the dealer
> could convey no better title than he received from the thief.

*Id.* at 39.  Provident Jewelry never possessed title to the Diamond because the Diamond was

stolen property and title still remained with Mrs. Litinsky.  Therefore, Provident Jewelry was

unable to pass title to the Diamond to Zakaria and Diamante even if Zakaria and Diamante were

also bona fide purchasers.  Mrs. Litinsky, as the "rightful owner of the property" has superior

possessory rights to Zakaria and Diamante.

Mrs. Litinsky's claims as to theft of the Diamond are based upon the statements of

Detective Rodriguez as made to Gary Kovacs.  Even if the Court views these statements as

heresay and affords them less weight, an injunction should still be ordered.  "Where denial of

injunctive relief would render the final judgment ineffectual, the degree of proof required to

establish the element of likelihood of success on the merits should be accordingly reduced."

*Republic of Lebanon v. Sotheby's,* 167 A.D.2d 142, 145, 561 N.Y.S.2d 566, 568-69 (1st Dep't

1990).  As discussed above, the denial of an injunction would permit Zakaria and Diamante, two

parties with no ownership interest in the Diamond, to take possession of the Diamond and do

with it as they wish.  The underlying action in this case is for replevin and an order of seizure of

the Diamond, and the return of the Diamond to Zakaria and Diamante, in California, would make

the final judgment ineffectual.

## II.  A Preliminary Injunction and Temporary Restraining Order Should Issue Pursuant to N.Y. C.P.L.R. § 7109(a) as the Diamond is a Unique Object

Fed. R. Civ. P. 64 provides that federal courts apply the rules of the state in which they sit when adjudicating an action for replevin.

> [A]ll remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the matter provided by the law of the state in which the district court is held…the remedies thus available include…replevin.

Fed. R. Civ. P. 64.  The underlying action is for replevin and return of possession of the Diamond under N.Y. C.P.L.R. Article 7100, Return of Chattel.  Therefore, all of New York's remedies and procedures present in Article 7100 are available in this action.

New York Law specifically provides:

> Where the chattel is unique, the court may grant a preliminary injunction or temporary restraining order that the chattel shall not be removed from the state, transferred, sold, pledged, assigned or otherwise disposed of until further order of the court.

N.Y. C.P.L.R. § 7109(a).  The requirements of 7109(a) are in addition to the standard requirements of a preliminary injunction and temporary restraining order.  *Danae Art Int'l,*, 163 A.D.2d at 82, 557 N.Y.S.2d at 339.

A diamond, by its very nature, is a unique object.  It comes about in nature through intense heat and pressure and is then mined.  Once it is mined raw, it is cut and polished individually.  Diamonds have been found to have "immutable, 'fingerprint like' characteristics." *Zarian Co*, 349 F. Supp. 2d at 694.  Also, the fact that GIA was able to identify the diamond submitted by Zakaria and Diamante as the Diamond reported lost by Mrs. Litinsky indicates that the Diamond is unique.

The Diamond is also unique because it is not mass produced.

> [T]he uniqueness requirement does not force [Mrs. Litinsky] to prove that [the Diamond] is rare or irreplaceable, but simply that it is not a mass-produced item readily available on the market, such that a money judgment enabling purchase of a replacement would be an adequate remedy.

*Christie's Inc.,* 247 F. Supp. 2d at 424.  Diamonds are not mass produced products, but rather mined, cut and polished individually after being discovered in nature.

Because the Diamond is unique, the injunction and temporary restraint that Mrs. Litinsky seeks to prevent the Diamond from being "removed from the state, transferred, sold, pledged, assigned or otherwise disposed of" should be granted.  N.Y. C.P.L.R. § 7109(a).

## III.    The Equities Favor Preserving the Status Quo

"The typical preliminary injunction…seeks only to maintain the status quo pending a trial on the merits."  *Tom Doherty Assocs.,* 60 F.3d at 34.  This is especially true in an action for replevin.  *Robjudi Corp. v. Quality Controlled Prods.,* 111 A.D.2d 156, 157, 488 N.Y.S.2d 787, 788 (2d Dep't 1985) ("Given the underlying realities of this particular situation [an action for replevin of certain chattels]…the status quo would best be preserved by granting plaintiff's motion for a preliminary injunction" enjoining transfer of the chattels.).  In the case of a unique chattel, as the Diamond, "the equities lie in favor of preserving the status quo."  *Republic of Lebanon,* 167 A.D.2d at 145, 561 N.Y.S.2d at 568-69; *Danae Art Int'l,* 163 A.D.2d at 82, 557 N.Y.S.2d at 339.  The chattel in this case is unique and there is a strong likelihood of success on the merits.  The equities, therefore, lie in granting the injunction.

## IV.    GIA Will Not Oppose the Preliminary Injunction and Temporary Restraining Order

Counsel to GIA has stated to counsel for Mrs. Litinsky that that GIA will not oppose an injunction to maintain the status quo pending a judicial determination of the ownership of the

Diamond.  Therefore, the preliminary injunction and temporary restraining order should be granted to restrain GIA.

**V.      No Bond Is Required Because There Is No Prejudice to Zakaria and Diamante**

"[T]he District Court is vested with wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm, or where the injunctive order was issued to aid and preserve the court's jurisdiction over the subject matter involved." *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (internal quotation marks omitted), *citing Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961). There is no likelihood of harm if the injunction and preliminary restraint are issued.  There is no indication that the market for diamonds will change at all in the near future, and therefore Zakaria and Diamante cannot show that the passing of time could impair them from obtaining a fair value for the Diamond.  If this Court finds Mrs. Litinsky is not the rightful owner of the Diamond (a proposition not supported by the facts in this case), then Zakaria and Diamante will be able to obtain value for the Diamond at that time.  In addition, the injunction and preliminary restraint will preserve the court's jurisdiction of the Diamond by ensuring that it will not be re-sold, transferred out of New York State, or cut up and resold by Zakaria and Diamante.

**CONCLUSION**

For all of the reasons stated above, Plaintiff Laura Litinsky respectfully requests that this Court grant her order to show cause for a temporary restraining order and preliminary injunction to preserve the status quo pending the outcome of the trial on the merits, and that GIA, its servants, employees, agents, representatives, and all persons acting in concert with them, be preliminary restrained and enjoined from returning the Diamond to Diamante and Zakaria, or from removing, transferring, dismantling, selling, pledging or otherwise disposing of the Diamond or permitting to the Diamond become subject to a security interest or lien, until such time as the underlying action is decided.

Dated:        New York, New York
              December 21, 2007

                                        _____
                                        Joshua W. Ruthizer (JR-5742)
                                        PROSKAUER ROSE LLP
                                        1585 Broadway
                                        New York, NY  10036-8299
                                        Phone:  (212) 969-3000
                                        Fax:  (212) 969-2900
                                        Email:  jruthizer@proskauer.com
                                        *Attorneys for Plaintiff*

-20-